UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------------- x
DEMONT HOPKINS,                                          :
                                                         :
                            Plaintiff,                   :
                                                         :         INITIAL REVIEW
            -against-                                    :         ORDER RE:
                                                         :         COMPLAINT
MELENDEZ, et al.,                                        :
                                                         :         24-CV-1263 (VDO)
                            Defendants.                  :
-------------------------------------------------------- x
```

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Demont Hopkins, a sentenced inmate incarcerated at Corrigan Correctional Center, filed this case *pro se* pursuant to 42 U.S.C. § 1983 against four defendants, Lieutenant St. Jean, and Correctional Officers Melendez, J. Torres, and Chaude. Plaintiff does not specify his claims; he merely describes the events underlying this action. Plaintiff seeks damages from Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

## I.    FACTUAL BACKGROUND

On September 16. 2023, Plaintiff told Defendant Torres that the toilet in his cell did not

work. ECF No. 1 ¶ 1. When Officer Torres told Plaintiff he would have to wait until Monday for the toilet to be fixed, Plaintiff refused to do so. *Id*. Officer Torres told Plaintiff that it was too late in the day and said that, if he did anything, he would send Plaintiff to restrictive housing. *Id.* ¶ 2. When Plaintiff said that he did not care, Officer Torres sent him to the restrictive housing unit. *Id.* Plaintiff alleges that Officer Torres issued a false disciplinary report to justify the move. *Id.*

Plaintiff remained in restrictive housing on Behavior Observation Status ("BOS") from September 16, 2023 until September 19, 2023. *Id.* When he was released from BOS, Plaintiff was placed in a cell that had dried human waste on the walls. *Id.* ¶ 3. When he reported the condition to Defendant St. Jean, the Defendant said he did not care and told Plaintiff to "write it up and make sure you spell my name right too." *Id.*

Defendant Chaude asked Plaintiff why Plaintiff did not come to him first. *Id.* ¶ 4. Following this exchange, Plaintiff received multiple disciplinary reports for threats and interference with safety and security issued on September 19, 2023 by Defendants Chaude and St. Jean. *Id.* ¶ 5.

On September 20, 2023, Defendant Melendez issued Plaintiff a disciplinary report for Security Risk Group ("SRG") affiliation. *Id.* ¶ 6. The report was also signed by Defendant St. Jean. *Id.* Prior to his restrictive housing placement, Plaintiff had given his PIN to another inmate, allegedly to permit the inmate to contact Plaintiff's family and tell them he had been sent to restrictive housing. *Id.* ¶ 7.

On September 23, 2023, Plaintiff was issued a disciplinary report for giving his PIN to another inmate. *Id.* ¶ 8. He pleaded guilty to the charge and "all of my Inmate Communications at a D.H.O. for all my DR'S tooken away." *Id.* Plaintiff filed an appeal claiming that he was a

rap artist and stating that his "videos, music and 5 star ent" were copyrighted. *Id.* ¶ 9.

## II.   <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a government entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id*., and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F.

App'x 24, 26 (2d Cir. 2017) (per curiam) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g., Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

## III.   **DISCUSSION**

Liberally construing the Complaint, the Court determines that Plaintiff may be asserting claims for false accusation against all defendants based on the several disciplinary reports issued on September 16, 2023 and September 19, 2023, and the SRG affiliation charge on September 23, 2023, First Amendment retaliation claims based on this same conduct, and Eighth Amendment claims for unconstitutional conditions of confinement against Defendant Torres based on the inoperable toilet in his original cell and against Defendant St. Jean based on the human waste on the walls of his restrictive housing cell.

### A.     **Official Capacity Damages Claims**

Plaintiff seeks damages against all defendants in their individual and official capacities. Defendants are all state employees. Thus, any claims against them for damages in their official

capacities are barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). All official capacity damages claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### B.    False Accusation

Plaintiff alleges that he was issued false disciplinary reports for threats and interference with safety and security and was falsely accused of SRG affiliation. "A prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). However, a claim of false accusation may be cognizable in two ways.

First, if the inmate was denied due process at the associated disciplinary hearing, he could assert a false accusation claim as part of his due process claim. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974) (inmate's protection against false accusation lies in the procedural due process protections required in the hearing process). Here, Plaintiff alleges no facts suggesting that he was denied due process at any hearings. Thus, he fails to allege facts meeting this exception.

Second, a false accusation claim is cognizable if "the false accusation is based on something more, such as 'retaliation against the prisoner for exercising a constitutional right.'" *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 372 (N.D.N.Y. 2010) (quoting *Boddie*, 105 F.3d at 862)). Plaintiff alleges that he received the disciplinary reports for complaining to Defendant Torres about the inoperable toilet and for complaining about the condition of his cell to Defendant St. Jean without first speaking to Defendant Chaude. The Court infers that Plaintiff is alleging that he was designated an SRG member because he exercised his First Amendment right to make song lyrics and music videos. The Court considers below whether these

5

allegations state claims for retaliation. If so, the false accusation claims will proceed with the retaliation claims.

**C.      Retaliation**

To state a cognizable First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)).

**1.      Complaints Regarding Cell Conditions**

Plaintiff alleges that he was issued disciplinary reports after he complained about the condition of his cells. Although the Second Circuit has not yet articulated a bright line rule regarding when oral speech is considered constitutionally protected to support a retaliation claim, some district courts have found that verbal complaints may be considered protected speech. *See Mejia v. Kurtzenacker*, No. 3:21cv1222(MPS), 2022 WL 19331, at *4 (D. Conn. Jan. 3, 2022). Courts distinguish between complaints about the conduct of staff members or conditions of confinement, which are considered protected speech, and verbal arguments or confrontations between a prisoner and correctional staff, which are not. *Id.* (citation omitted). For purposes of initial review, the Court considers Plaintiff's complaints about the conditions in his cells sufficient to meet the first element of a retaliation claim.

The Second Circuit has defined adverse action as retaliatory conduct that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (internal quotation marks and citation omitted). Plaintiff alleges that he was issued disciplinary reports for making complaints.

He does not indicate whether he was found guilty of the charges or, if so, what sanctions were imposed. However, he does allege that he was sent to restrictive housing and placed on BOS for three days in response to the accusation by Defendant Torres. The Court will permit the claim to proceed for further development of the record on this element.

Finally, Plaintiff has alleged that the disciplinary reports were issued immediately following his exercises of protected activity. Thus, Plaintiff also has met the third element.

Plaintiff's retaliation claims relating to his complaints about cell conditions, along with his claims for false accusation in the disciplinary reports, will proceed against Defendants St. Jean, Chaude, and Torres.

## 2. SRG Affiliation

Plaintiff's allegations suggest that his SRG affiliation was based on his music videos and lyrics. He does not indicate how Defendant Melendez learned of his music. The Court assumes that Plaintiff posted it on the internet or to a social media account.

The Supreme Court has recognized a First Amendment interest in posting on social media. *See Packingham v. North Carolina*, 582 U.S. 98, 108 (2017) ("to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights"). The First Amendment also protects speech on the internet. *See Doe 1 v. Individuals*, 561 F. Supp. 2d 249, 253-54 (D. Conn. 2008) (citing *Reno v. ACLU*, 521 U.S. 844, 870-71 (1997)). Thus, Plaintiff's posts to social media or on the internet constitute protected speech.

The second requirement is that Defendants took adverse action against Plaintiff. The Second Circuit has held that "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an

adverse action." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). Whether a particular action is considered adverse depends on the circumstances. *Id.* Here, Plaintiff includes no allegations regarding any conditions he experiences while designated an SRG member. Thus, the Court cannot assess whether he was subjected to adverse action.

The final requirement is that the adverse action was caused by Plaintiff's exercise of his First Amendment rights. In *Caves v. Payne*, No. 3:20-cv-15(KAD), 2020 WL 1676916 (D. Conn. Apr. 6, 2020), the inmate claimed that he was designated an SRG member and placed in the SRG Program solely because of his social media posts. However, the court in *Caves* found that this allegation was insufficient to establish the required causal connection. 2020 WL 1676916, at *4. The court explained that the inmate's designation to the SRG Program was not made to punish him for posting on social medial or to deter him from doing so in the future. The social media post was just the evidence used to support his designation. The court reasoned that using the social media posts was no different than if the plaintiff had announced upon arrival at a correctional facility that he was a gang member, and the defendants then used that statement to designate him as an SRG member. *Id.*; *see also Robinson v. Doe I*, No. 3:23-cv-1631(SVN), 2024 WL 1639539, at *3 (D. Conn. Apr. 16, 2024) ("several recent decisions in this district have held that allegations that prison officials relied on social media posts to determine whether an inmate was an SRG member do not satisfy the causal requirement to state a valid First Amendment retaliation claim." (citing cases)). Nor were Defendants seeking to punish Plaintiff for creating his songs or music videos or posting them on the internet. Thus, Plaintiff fails to establish the required causal connection to support a First Amendment retaliation claim. Accordingly, the First Amendment claim against Defendants Melendez and St. Jean for the SRG designation, along with the false accusation claim against him, are

dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

      D.    **Conditions of Confinement**

Plaintiff alleges that the toilet in his cell was inoperable and there was dried human waste on the walls of his cell in restrictive housing. To establish an Eighth Amendment claim based on this confinement, Plaintiff must allege facts showing that the conditions resulted in a deprivation that was sufficiently serious, and Defendant acted with deliberate indifference to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be sufficiently serious, the conditions of his confinement must have deprived Plaintiff of "the minimal civilized measure of life's necessities" or constitute an "unquestioned and serious deprivation of basic human needs." *Id.* These needs include "food, clothing, medical care, and safe and sanitary living conditions." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation and internal quotation marks omitted). The Supreme Court has explained that "the Constitution does not mandate comfortable prisons," and "conditions [that] are restrictive and even harsh ... are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981).

Plaintiff alleges that the toilet in his cell was inoperable. However, he was sent to restrictive housing immediately after he complained to Defendant Torres. Thus, he was not subjected to unconstitutional conditions as a result of the inoperable toilet. Any conditions of confinement claim against Defendant Torres is dismissed pursuant to 28 U.S.C. §1915A(b)(1).

Plaintiff also alleges that his restrictive housing cell to which he was moved after being released from BOS had dried human waste on the walls. He does not indicate how long he remained in that cell. The Second Circuit has "long recognized that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment."

*Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013). However, in cases where the Second Circuit has found a constitutional violation, the conditions were significantly more serious than those Plaintiff alleges. *See, e.g., Willey v. Kirkpatrick*, 801 F.3d 51, 55, 58. 66 (2d Cir. 2015) (reversing dismissal where plaintiff alleged he was placed "in solitary confinement with a Plexiglas shield restricting the airflow to his small cell" and his toilet was inoperable "so that he was reduced to breathing a miasma of his own accumulating waste," and then was transferred to "an observation cell whose walls and mattress were smeared with feces and stained with urine"); *Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001) (inmate stated Eighth Amendment claim based on allegations that cell was infested with mice and area in front of cell "was filled with human feces, urine, and sewage water" for several consecutive days).

Plaintiff alleges only that there was dried human waste on the walls. In *Cagle v. Gravlin*, No. 909-CV-0648(FJS/GHL), 2010 WL 2088267 (N.D.N.Y. Apr. 29, 2010), *report and recommendation adopted*, 2010 WL 2087437 (N.D.N.Y. May 25, 2010), however, the court determined that an allegation that "there were feces on the wall and gate" was sufficient to plausibly state a conditions of confinement claim. *Id*. at *6. The Court considers Plaintiff's allegation sufficiently similar to the allegation in *Cagle* to warrant further development of the record.

Plaintiff also alleges that he complained about the conditions to Defendant St. Jean and Defendant Chaude. Thus, both Defendants were aware of the conditions and did nothing. The conditions of confinement claim against Defendants St. Jean and Chaude will proceed to service.

## IV.   **CONCLUSION**

The claims for retaliation and false accusation based on the SRG designation and all claims against the defendants for damages in their official capacities are DISMISSED pursuant to 28 U.S.C. §1915A(b)(1).

The case will proceed on the First Amendment retaliation claims and the false accusation claims against Defendants Torres, St. Jean, and Chaude based on the disciplinary reports issued to Plaintiff and the conditions of confinement claim against Defendants St. Jean and Chaude based on the restrictive housing cell in their individual capacities.

The Court enters the following additional orders.

(1)    **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain current service addresses for Defendants Torres, St. Jean, and Chaude, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided by **September 26, 2024**, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)    **The Clerk shall** send Plaintiff a copy of this Order.

(3)    **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)    Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file

an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **April 3, 2025**. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed by **May 5, 2025**.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

**Changes of Address**.  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

Hartford, Connecticut
September 5, 2024

    /s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge